WO                                                                                      SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Isiah Romont Hill,                              No.  CV 19-05693-PHX-JAT (MTM)

               Plaintiff,

v.                                              **ORDER**

Arizona Department of Corrections, et
al.,

               Defendants.

## I.      Procedural Background

On August 20, 2019, Plaintiff Isiah Romont Hill, who is in the custody of the Arizona Department of Corrections (ADC), filed a "State Court Complaint" in Maricopa County Superior Court case #CV 2019-004926 against several Defendants, including ADC.  (Doc. 1-3 at 3-6.)[1]  In his Complaint, Plaintiff asserted violations of his First through Fourteenth Amendment rights allegedly stemming from the use of excessive force and restrictions on seeing one of his children.  The State of Arizona was served on October 30, 2019.[2]  On November 27, 2019, the State and ADC removed the case to this Court based upon federal question subject matter jurisdiction.  (Doc. 1.)

On December 5, 2019, Plaintiff filed a motion to strike the notice of removal

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[2] Although the State of Arizona was not a named Defendant, it was served with the Complaint and has noted that, to the extent Plaintiff seeks relief against ADC, the State is the real party in interest.

(Doc. 4), which the Court construed as a motion to remand to state court.  On December 9, 2019, Plaintiff filed two notices (Docs. 5 and 6).  On December 12, 2019, Defendants filed a response to Plaintiff's motion to strike (Doc. 7).  On December 18, 2019, Plaintiff filed a motion to proceed (Doc. 8) and a motion to suppress (Doc. 9).  On January 2, 2020, Plaintiff filed an objection to Prison Litigation Reform Act (PLRA) review (Doc. 10) and another notice (Doc. 11).  On January 8, 2020, Plaintiff filed a motion to stay (Doc. 12), and on January 14, 2020, he filed a motion for ruling on his motion to suppress (Doc. 13).

In a January 28, 2020 Order, the Court overruled Plaintiff's objection to PLRA review of his Complaint,[3] denied his notices to the extent that any relief was sought and denied his motions (Doc. 14).  The Court also dismissed the Complaint with leave to file a first amended complaint on the court-approved form within 30 days.[4]  (*Id.*)

On February 3, 2020—apparently before he had received the Court's January 28, 2020 Order—Plaintiff filed a motion for the status of his motion to suppress (Doc. 15).  In a February 5, 2020 Order (Doc. 16), the Court granted the motion for status to the extent the February 5 Order informed him of the status of this action and his motion to suppress. Plaintiff then filed a "Motion to Strike/or Impeach Submitted Notice of Judged Fact Rule 201" (Doc. 18).  In that motion, Plaintiff asked the Court to strike the removal of this action from the record, which the Court denied (Doc. 21).

On February 20, 2020, Plaintiff filed a First Amended Complaint (Doc. 23) but did not comply with the Order to use the court-approved form.  Plaintiff also filed, among other motions, a motion for entry of default judgment (Doc. 26).  In an April 20, 2020, Order, the Court dismissed the First Amended Complaint for failure to comply with court orders and denied Plaintiff's motions.  The Court granted Plaintiff an additional opportunity to file an amended complaint using the court-approved form (Doc. 30).

---

[3] *See* 28 U.S.C. § 1915A(a).

[4] The Court granted Plaintiff 30 days to file a first amended complaint using this Court's approved form complaint for use by prisoners.  (*Id.*)  The Court expressly warned Plaintiff that failure to use the court-approved form complaint could result in an amended complaint being ordered stricken.  (*Id.* at 3-4.)

On June 1, 2020, Plaintiff filed a motion for reconsideration of the denial of his motion for entry of default judgment (Doc. 34).  In an Order filed on June 8, 2020, the Court denied the motion for reconsideration (Doc. 35) but granted Plaintiff a 30-day extension of time to file a second amended complaint using the court-approved order. (Doc. 35.)

On June 11, 2020, Plaintiff filed a motion, apparently prior to receiving a copy of the Court's June 8 Order, for an extension of time to file an amended complaint because he was on a locked-down yard (Doc. 36).  Plaintiff also requested the status of his "default motion."   On June 15, 2020, Plaintiff filed a motion to stay all proceedings "until his Declaration for entry of default [wa]s decided."   (Doc. 37.)   Plaintiff also filed an application for entry of default (Doc. 38).  Plaintiff subsequently filed another motion to stay (Doc. 39), a motion for entry of default judgment (Doc. 41), a motion for a permanent injunction (Doc. 42), a request for the court-approved form complaint (Doc. 43), an amended motion for default judgment (Doc. 44), a declaration in support of his amended motion for default judgment (Doc. 45), a motion for status of his motion for default judgment and other filings (Doc. 46), an objection to the PLRA (Doc. 48), a motion for default judgment (Doc. 49) and supporting declaration (Doc. 50), a Second Amended Complaint (Doc. 51), a motion to nullify Second Amended Complaint (Doc. 52), a motion to stay Second Amended Complaint (Doc. 54), an extended reply (Doc. 54) to Defendant's notice of non-response, and an extended reply (Doc. 55) to Defendants' notice of non-response.

In an Order filed on July 23, 2020, the Court denied Plaintiff's motions except to the extent that the Court addressed the status of filings and dismissed the Second Amended Complaint with leave to amend (Doc. 56).  On July 29, 2020, Plaintiff filed an objection (Doc. 57), a motion for reconsideration (Doc. 58), and a motion for clarification (Doc. 59). The Court overruled Plaintiff's objection and denied the motions (Doc. 61).

## II.   Pending Filings

On August 3, 2020, Plaintiff filed a "Motion for the Record and to Report Judicial

Misconduct and a Violation of due process/Render Void" (Doc. 60).  On August 10, 2020, Plaintiff filed a motion to dismiss his August 3 Motion (Doc. 62).  The motion to dismiss will be granted.

In addition, Plaintiff filed yet another motion for entry of default (Doc. 63) and motion for entry of default judgment (Doc. 64), a motion for clarification (Doc. 65), a Third Amended Complaint (Doc. 66), a motion to amend the Third Amended Complaint (Doc. 67) and a one-page attachment to the Third Amended Complaint (Doc. 68), a notice of PLRA (Doc. 69), a notice of filing habeas corpus case (Doc. 70), a motion for entry of a permanent injunction (Doc. 71), a motion for status of his motion for entry of a permanent injunction (Doc. 72), a supplement to the motion for permanent injunction (Doc. 73), a motion for status of default (Doc. 74) and amended motion for status of default (Doc. 75) (which moots the motion at Doc. 74), and a motion for hearing (Doc. 78).

The Court will grant Plaintiff's motions for status to the extent discussed herein and will otherwise deny those motions.  The Court will deny Plaintiff's notices to the extent that any relief is sought therein.

The Court will deny the motions for entry of default, entry of default judgment, and for clarification.  The Court has previously denied Plaintiff's motions for entry of default, entry of default judgment, and reconsideration of those denials.  The Court declines to again reconsider those decisions.

In his motion for a permanent injunction and supplement,[5] Plaintiff claims this Court agreed to enter an injunction in response to his motion for a permanent injunction (Doc. 42).  He claims the Court invalidated his conviction and sentence and that "the Defendant" admitted as much; neither statement is true.  Plaintiff also inaccurately claims the Court ordered him to file a petition for habeas corpus.[6]  Accordingly, Plaintiff's motion for a

---

[5] In his supplement, Plaintiff seeks a three-judge panel to address the motion.  There is no basis for referring this matter to a three-judge panel.

[6] With respect to filing a petition for writ of habeas corpus, the Court informed Plaintiff that he could not obtain release in a § 1983 case and that such relief was only available in federal court in a habeas corpus case.  The Court in no way indicated that the mere filing of a habeas corpus petition would result in release, merely that Plaintiff could

permanent injunction, as supplemented, will be denied, as will his motion for hearing.

Plaintiff has filed a motion for leave to amend his Third Amended Complaint to add largely unidentified persons or entities as defendants and to allege additional claims concerning events occurring since 2008.[7]  Local Rule of Civil Procedure 15.1 requires a party seeking leave to amend to submit a proposed amended pleading.  Plaintiff has not submitted a proposed fourth amended complaint.  Accordingly, the Court will deny the motion for leave to amend.

The Court will dismiss the Third Amended Complaint for failure to state a claim and dismiss this case.

**III.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-

_____

not obtain release via a § 1983 case.

Specifically, the Court stated:

> Plaintiff may not obtain release from incarceration in a civil rights case.  Generally, "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," whereas a civil rights action is the proper channel for "requests for relief turning on circumstances of confinement."  *Muhammad v. Close*, 540 U.S. 749, 750 (2004); *see Hill v. McDonough*, 547 U.S. 573, 579 (2006); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  Accordingly, Plaintiff's motion for an injunction will be denied without prejudice to Plaintiff filing a petition for writ of habeas corpus under 28 U.S.C. § 2254.

(Doc. 56 at 4 (addressing Plaintiff's motion for a permanent injunction, Doc. 42.))

[7]  As he previously has, Plaintiff claims that he has immunity, he was never properly convicted, and he is being illegally incarcerated.

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**IV.   Third Amended Complaint**

In his three-count Third Amended Complaint, Plaintiff asserts claims for excessive force, cruel and unusual punishment, false imprisonment, and violation of associational rights. Plaintiff sues Charles Ryan, the former ADC Director, South Unit Sergeant David Dickey, and Corrections Officers (COs) DeFeo and Slade. Plaintiff seeks compensatory and punitive relief.

In **Count I**, which Plaintiff designates as an excessive force claim, Plaintiff asserts that being forced to report "by my illegally given illegal living area" constitutes excessive physical force. (Doc. 66 at 3.) As his injury, Plaintiff asserts attempted suicide, mental harm, insomnia, illness, stress, and a "broken heart."

In **Counts II** and **III**, Plaintiff purports to assert the same "facts" and injuries against

the same Defendants as Count I and asks the Court to see "attached Complaint CV# 2019-4926," i.e., his original Complaint.  Plaintiff claims Defendants admitted the facts alleged pursuant to "Rule 8(B)(6)," apparently referring to Rule 8(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 66 at 4, 5.)

In a "case summary" attached to the Third Amended Complaint, Plaintiff refers to page eight of his original Complaint[8] which, according to Plaintiff, Defendants admitted under Rule 8(b)(6).  Plaintiff states this Court screened his Second Amended Complaint and claims, incorrectly, that the Court found his sentence and conviction in his state criminal case, CR 2006-009614, were void.  He further claims that *Heck v. Humphrey*, 520 U.S. 477, 486-87, 490 (1994), does not bar his claims.  Plaintiff states that he is dropping a basic necessities claim and asserting an Eighth Amendment claim for cruel and unusual punishment.  (*Id.* at 7.)

In the second attached page, Plaintiff asserts "all defendants" were or are violating his Fourth Amendment rights by restraining him from leaving prison grounds.  (*Id.* at 8.) He claims that his arrest, conviction, and sentence constitute an illegal seizure that prevents him from returning home and seeing his daughter.  He claims Defendants admitted they failed to indict him for a crime, and he claims he has "immunity to move about" at will. (*Id.*)  He claims Defendants had no right to restrain him and prevent his children from seeing him by guarding the prison perimeter fences.  He claims excessive force is being used in preventing him from leaving prison and forcing him and his daughter to comply with inapplicable policies to see each other.  He claims that no Defendant has legal authority over him or his daughter, but they are nevertheless preventing him and his daughter from seeing each other.

In a third attached page, Plaintiff asserts that he is like a slave on a plantation and is "illegally" told what to do, which he characterizes as cruel and unusual punishment and false imprisonment.  (*Id.*at 9.)  Plaintiff asserts that Ryan is a "direct defendant" in Plaintiff's criminal case and is therefore "clearly aware" that Plaintiff has immunity.

---

[8] Plaintiff's Complaint contained only four pages.  (Doc. 1-3 at 3-6.)

1  Plaintiff asserts that Ryan's failure to train and supervise "all defendants," is tantamount
2  to "aid[ing] and abet[ting] the excessive force/illegal seiz[ure]." (*Id.*)  Plaintiff claims that
3  Ryan's alleged acts were malicious and constituted cruel and unusual punishment and false
4  imprisonment.  Plaintiff asserts that in prior cases, "all defendants were named . . . .  Their
5  job is to be aware of what the[y're] involved in as employees/adults representing the State."
6  (*Id.*)   He asserts their lack of concern and failure to act once they became aware of
7  Plaintiff's false imprisonment was malicious and sadistic and caused harm.  He contends
8  that "all defendants have illegally used excessive force on plaintiff" since 2008.  (*Id.*)  He
9  seeks $10-25 million a year from each Defendant.  In the balance of the attachment,
10  Plaintiff purports to describe the outcomes of several previously filed cases.

11  **V.     Failure to State a Claim**

12         To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants
13  (2) under color of state law (3) deprived him of federal rights, privileges or immunities and
14  (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir.
15  2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278,
16  1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury
17  as a result of the conduct of a particular defendant and he must allege an affirmative link
18  between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-
19  72, 377 (1976).

20         **A.     *Heck v. Humphrey***

21         As the Court has previously informed Plaintiff, he may not seek damages in *this*
22  case for alleged violations of his constitutional rights during his criminal proceedings
23  unless and until his convictions and sentences have been invalidated.  A prisoner's claim
24  for damages cannot be brought under 42 U.S.C. § 1983 if "a judgment in favor of the
25  plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the
26  prisoner demonstrates that the conviction or sentence has previously been reversed,
27  expunged, or otherwise invalidated.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).
28  Plaintiff has failed to establish that his convictions or sentences have been invalidated, his

assertions to the contrary notwithstanding.  Accordingly, to the extent that Plaintiff asserts a claim for false arrest or malicious prosecution, such claims are barred as not having accrued under *Heck*.

**B.     Excessive Force**

Plaintiff asserts that by limiting his freedom and restricting what he may do while incarcerated, "Defendants" have used excessive force, even if not physical.  When a prisoner claims that prison officials violated his Eighth Amendment rights by using excessive physical force, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  However, the Supreme Court has made it clear that not every use of physical force violates the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  *See Johnson v. Glick*, 481 F.2d [1028, 1033 (2nd Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

*Id.* at 9.

Plaintiff asserts that his incarceration is unlawful and that merely being confined within the prison perimeter, and being subject to prison rules, constitutes excessive force.  As discussed above and in previous orders, Plaintiff has not established that his convictions or sentences have been invalidated and his vague assertions to the contrary do not alter the status of his convictions and sentences.[9]  Consequently, Plaintiff cannot and has not alleged

---

[9] Plaintiff wrongly claims to never have been indicted by a grand jury.  On October 6, 2006, Petitioner was indicted in Maricopa County Superior Court on more than 80 counts, including conspiracy, illegal control of an enterprise, attempted illegal control of an enterprise, operating or maintaining a house of prostitution, attempted pandering, kidnapping, sexual assault, attempted child prostitution, sexual abuse, use of wire communication for electronic communication in drug related transactions, child prostitution, threatening or intimidating, transporting persons for purposes of prostitution, and pandering.  *See Hill v. White*, No. CV10-01339-PHX-GMS (LOA) (D. Ariz. Apr. 4, 2011) (Report and Recommendation), Doc. 45 at 1-2 (citing state court record), adopted on May 2, 2011, Doc. 54.

facts to support that he is illegally confined and subjected to prison rules.[10]   Plaintiff otherwise fails to allege facts to support that anyone has used physical force against him, much less excessive physical force.   Accordingly, Plaintiff fails to state a claim for excessive force.

### C.   Associational Rights

Plaintiff also appears to be asserting a violation of his right to family association. The substantive due process right to familial association is well established.   *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2010).[11]   Parents possess a "fundamental liberty interest" in companionship with their children.   *Id.*; *see Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion) ("the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court").   The extent to which this right survives incarceration is unclear. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (declining to determine the extent to which familial association right survives incarceration because prison visitation limits were rationally related to legitimate penological interests) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Dunn v. Castro*, 621 F.3d 1196, 1201, 1202 (9th Cir. 2010) (distinguishing incarcerated plaintiff's right to visits with his child from an "ordinary father['s] . . . general right to a relationship with his child"; finding instructive the *Overton* Court's "hesitation in articulating the existence and nature" of such a right in the context of visitation). "Official conduct that 'shocks the conscience' in depriving parents of [a relationship with their children] is cognizable as a violation of due process[.]" *Capp v. County of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th

---

[10]   Incarceration pursuant to a valid conviction does not violate the Thirteenth Amendment.   "The Thirteenth Amendment declares that '[n]either slavery nor involuntary servitude, **except as punishment for crime whereof the party shall have been duly convicted**, shall exist within the United States, or any place subject to their jurisdiction.'" *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting Amendment XIII) (Emphasis added)).   "By its terms [the Thirteenth] Amendment excludes involuntary servitude imposed as legal punishment for a crime."   *Id.* at 943.

[11]   There are also First Amendment rights to familial association.   *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).

Cir. 2010) (alteration in *Capp*)).  "While the right [to familial association] is a fundamental liberty interest, officials may interfere with the right if they provide the parents with fundamentally fair procedures."  *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (internal citations and quotations omitted).

Plaintiff fails to allege facts—other than his mere imprisonment—to support when and how each Defendant violated his right of familial association.  He also fails to allege whether any Defendant provided a basis for his or her purported denial of visitation.  Accordingly, Plaintiff fails to state a claim for denial of associational rights.

**VI.    Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his Third Amended Complaint, the Court will dismiss his Third Amended Complaint.  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint.  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend.  *Moore*, 885 F.2d at 538.

Plaintiff has made three efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court.   The Court finds that further opportunities to amend would be futile.  Therefore, the Court, in its discretion, will dismiss Plaintiff's Third Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)    Plaintiff's Motion to Dismiss (Doc. 62) his "Motion for the Record and to Report Judicial Misconduct and a Violation of due process/Render Void" is **granted** and the "Motion for the Record" (Doc. 60) is **dismissed**.

(2)    Plaintiff's motion to add to his Third Amended Complaint (Doc. 67) and his attachment to the Third Amended Complaint (Doc. 68) are **denied** to the extent that any relief is sought.

(3)     The Third Amended Complaint (Doc. 66) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(4)     Plaintiff's motion for status of his motion for a permanent injunction (Doc. 72) is **granted** to the extent stated herein.

(5)     Plaintiff's notices (Docs. 69, 70) are **denied** insofar as any relief is sought therein.

(6)     Plaintiff's remaining motions (Docs. 63, 64, 65, 67, 71, 75, and 78) are **denied**.

(7)     The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and concludes that an appeal would not be taken in good faith.

Dated this 21st day of January, 2021.

James A. Teilborg
Senior United States District Judge